UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 08-78 (RJL) |
| v. | : | |
| MARINA CONCEPCION MONTIEL, | : | FILED |
| Defendant. | : | APR 2 3 2008 |
| | | NANCY MAYER WHITTINGTON, CLERK |
| | | U.S. DISTRICT COURT |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **MARINA CONCEPCION MONTIEL** ("**MONTIEL**") and the United States agree and stipulate as follows:

1.  Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months. A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency. The District of Columbia Department of Motor Vehicles ("DMV") has specifically limited the types of documentation it will accept. For example, original birth certificates, unexpired passports or resident alien cards can prove an individual's identity ( i.e., name and date of birth). In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate. The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

2.  Applicants for driver's licenses must pass the following three tests: vision screening,

1

knowledge and street sign recognition and skills road. Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test. Applicants who possess a valid driver's license from a foreign jurisdiction need not take the road test, but must successfully pass the eye screening and knowledge and street sign recognition tests.

3. In or about November, 2007, defendant **MONTIEL** spoke to a man in Spanish on a Metro bus on the way to her cleaning job at the Navy Marine Barracks, in the southeast quadrant of the District of Columbia. When defendant **MONTIEL** told this man that she rode the bus to work because she could not pass the test for a driver's license, he told her that she could purchase a D.C. driver's license without having to take the test. This man told defendant **MONTIEL** that the woman who could arrange the purchase had been engaged in such conduct for 4 years. Defendant **MONTIEL** told this man that she was interested. Sometime thereafter, defendant **MONTIEL** spoke by telephone with Gloria Gonzalez Paz, who instructed defendant **MONTIEL** to meet her on November 30, 2007, at the Metro station on 14th Street, N.W.

4. On or about November 30, 2007, defendant **MONTIEL** complied with Gloria Gonzalez Paz's instructions and met her outside the Metro station. Defendant **MONTIEL** got into Paz's minivan. Paz's 15-year-old daughter and two men were also inside. They all drove to DMV's Georgetown branch. Paz's 15-year-old daughter accompanied defendant **MONTIEL** inside the Georgetown Park Mall and told her to go to the DMV employee at window 4. At approximately 12:40 p.m., defendant **MONTIEL** approached the DMV employee at window 4. She did not complete an application, but provided the DMV employee at window 4 with her name, date of birth, social security number, and her brother's D.C. address on Oglethorpe Street, N.E. Defendant **MONTIEL** did not reside in the District of Columbia. Defendant **MONTIEL**

did not take any tests, including the vision, knowledge and road skills examinations. She paid the $39.00 license fee by tendering a personal check, bearing her Hyattsville, Maryland address, to the DMV employee at window 4. After her photograph was taken, she was given a facially valid D.C. driver's license with an expiration date of June 30, 2012 even though the expiration date on defendant **MONTIEL** work permit was several years earlier. Then, defendant **MONTIEL** joined Paz and her daughter at a nearby Chipotle for lunch. Paz told defendant **MONTIEL** that the cost of the license was $1,700. When defendant **MONTIEL** told Paz that she only had $1,500 with her, Paz agreed to accept the reduced amount.

*marina montiel*
**MARINA CONCEPCION MONTIEL**, Defendant